**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. ______________ |
| v. | JURY TRIAL DEMANDED |
| ASV HOLDINGS, INC., ANDREW M. ROOKE, BRIAN J. HENRY, MICHAEL A. LISI, JOSEPH M. NOWICKI, and DAVID ROONEY, | CLASS ACTION |
| Defendants. | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on June 27, 2019 (the "Proposed Transaction"), pursuant to which ASV Holdings, Inc. ("ASV" or the "Company") will be acquired by Yanmar America Corporation, Osaka Merger Sub, Inc., and Yanmar Co, Ltd. (together, "Yanmar").

2. On June 26, 2019, ASV's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Yanmar. Pursuant to the terms of the Merger Agreement, ASV's stockholders will receive $7.05 in cash for each share of ASV common stock they own.

3. On July 30, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the

Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for September 4, 2019.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ASV common stock.

9. Defendant ASV is a Delaware corporation and maintains its principal executive offices at 840 Lily Lane, Grand Rapids, Minnesota 55744. ASV's common stock is traded on the NasdaqCM under the ticker symbol "ASV."

10. Defendant Andrew M. Rooke is Chief Executive Officer and Chairman of the Board of the Company.

11. Defendant Brian J. Henry is a director of the Company.

12. Defendant Michael A. Lisi is a director of the Company.

13. Defendant Joseph M. Nowicki is a director of the Company.

14. Defendant David Rooney is a director of the Company.

15. The defendants identified in paragraphs 10 through 14 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

16. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of ASV (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

17. This action is properly maintainable as a class action.

18. The Class is so numerous that joinder of all members is impracticable. As of June 26, 2019, there were approximately 9,909,858 shares of ASV common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

19. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

20. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately

protect the interests of the Class.

21. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

22. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

23. ASV is a designer and manufacturer of compact construction equipment.

24. On June 26, 2019, ASV's Board caused the Company to enter into the Merger Agreement with Yanmar.

25. Pursuant to the terms of the Merger Agreement, ASV's stockholders will receive $7.05 in cash for each share of ASV common stock they own.

26. According to the press release announcing the Proposed Transaction:

> ASV Holdings, Inc. (NASDAQ: ASV), a leading provider of rubber-tracked compact track loaders (CTLs) and wheeled skid steer loaders (SSLs) in the compact construction equipment market, today announced that it has entered into a definitive merger agreement with an affiliate of Yanmar Holdings (Yanmar). Under the terms of the agreement, which been approved by both the ASV and Yanmar Boards of Directors, ASV stockholders will receive $7.05 in cash for each outstanding share of ASV common stock, for a total value of $70.7 million. The ASV Board of Directors unanimously approved the agreement with Yanmar and recommends that ASV stockholders vote in favor of the transaction.
>
> The combination of ASV's compact track loaders and skid steer loaders with the compact equipment portfolio of Osaka, Japan-based Yanmar, creates a

> comprehensive and global provider of compact equipment with virtually no overlap in distribution networks. The ASV employee base, its manufacturing and distribution facility, international distribution network and supply chain creates a strong platform for North American expansion and will be a key part of Yanmar's long-term international growth plans.
>
> The transaction is subject to approval by ASV stockholders and other customary closing conditions and is expected to close in the third quarter of 2019. In conjunction with the Merger Agreement, a subsidiary of Terex Corporation (NYSE: TEX), which owns 34% of the outstanding shares of ASV, has entered into a stockholder voting agreement in support of the Merger. . . .

27. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 7.03(a) and (b) of the Merger Agreement provide:

> The Company shall, and shall cause its Subsidiaries, and shall instruct (and use its reasonable best efforts to cause) the Representatives of the Company to, immediately cease and cause to be terminated any solicitation, discussions, communications or negotiations with any Person that may be ongoing with respect to an Acquisition Proposal, or any inquiry, proposal or offer that would reasonably be expected to lead to an Acquisition Proposal, and shall request within five (5) Business Days of the date of this Agreement the prompt return or destruction of all confidential information previously furnished to any Person in connection therewith and immediately terminate all physical and electronic dataroom access previously granted to any such Person, its Affiliates, Representatives or financing sources. . . .
>
> Except as expressly permitted by this Section 7.03, during the Pre-Closing Period, the Company agrees that it shall not and shall cause each of its Subsidiaries and any of their officers, directors or employees of it or any of its Subsidiaries not to, and shall cause the other Representatives of the Company not to, directly or indirectly, (i) solicit, initiate, knowingly facilitate, knowingly induce or knowingly encourage any inquiries with respect to or the implementation or submission of any Acquisition Proposal, or any inquiries, proposals or offers that would be reasonably expected to lead to, an Acquisition Proposal, (ii) engage in, continue or otherwise participate in any discussions, communications or negotiations regarding, or furnish to any Person any non-public information in connection with, or for the purpose of facilitating or encouraging, any inquiries, proposals or offers that constitute, or would be reasonably expected to lead to, an Acquisition Proposal, except to notify such Person of the existence of this Section 7.03 or (iii) execute or enter into any Acquisition Agreement. . .

28. Additionally, the Company must promptly advise Yanmar of any proposals or inquiries received from other parties. Section 7.03(c) of the Merger Agreement states:

> The Company shall promptly (and, in any event, within 48 hours) (i) provide Parent written notice of (A) the receipt of any Acquisition Proposal or (B) any inquiries, proposals or offers received by the Company, any of its Subsidiaries, or any Representatives of the Company concerning an Acquisition Proposal and (ii) disclose to Parent the identity of such Person making, and an unredacted copy of, any such Acquisition Proposal or any such inquiry, proposal or offer made in writing (or, if made orally, a reasonably detailed description of such Acquisition Proposal, inquiry, proposal or offer). The Company shall, promptly upon receipt or delivery thereof (and, in any event, within 48 hours), provide Parent with copies of all drafts and final versions of definitive or other agreements including schedules and exhibits thereto (which may be redacted to the extent necessary to protect confidential information of the Person making such Acquisition Proposal) relating to such Acquisition Proposal, in each case exchanged between the Company or any of its Representatives, on the one hand, and the Person making such Acquisition Proposal or any of its Representatives, on the other hand. The Company shall keep Parent reasonably informed on a reasonably prompt basis (and, in any event, within 48 hours of any material development) of the status and details (including with respect to any change in price or other material amendments) of any such Acquisition Proposal or other inquiry, proposal or offer concerning an Acquisition Proposal. The Company shall promptly (and, in any event, within 48 hours) following a determination by the Company Board that an Acquisition Proposal is a Superior Proposal, notify Parent of such determination.

29. Moreover, the Merger Agreement contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Yanmar a "matching right" with respect to any "Superior Proposal" made to the Company. Section 7.03(e) of the Merger Agreement provides:

> Notwithstanding anything in this Section 7.03 to the contrary, prior to the receipt of the Company Stockholder Approval and so long as the Company is not then in breach (or deemed breach) of this Section 7.03, (i) if the Company receives an unsolicited, written Acquisition Proposal that the Company Board determines in good faith (after consultation with its outside advisors) is a Superior Proposal and determines in good faith (after consultation with its outside legal counsel) that its failure to effect an Adverse Recommendation Change would be inconsistent with its fiduciary duties under applicable Law, the Company may terminate this Agreement pursuant to Section 9.01(d)(ii) to enter into a definitive agreement with respect to such Superior Proposal or (ii) the Company Board may effect an Adverse

Recommendation Change if a Company Intervening Event occurs and as a result thereof the Company Board determines in good faith (after consultation with its outside legal counsel) that the failure to effect an Adverse Recommendation Change would be inconsistent with its fiduciary duties under applicable Law; provided that:

(A) prior to terminating this Agreement pursuant to Section 9.01(d)(ii) to enter into a definitive agreement with respect to a Superior Proposal, (w) the Company has notified Parent in writing that it intends to take such actions, (x) the Company has provided Parent a summary of the material terms and conditions of such Superior Proposal, which shall include all of the information that is specified in Section 7.03(c), (y) if requested to do so by Parent, for a period of three (3) calendar days following delivery of such notice, the Company shall have discussed and negotiated in good faith, and shall have made the Representatives of the Company available to discuss and negotiate in good faith, with Parent and its Representatives, any bona fide proposed modifications to the terms and conditions of this Agreement; and (z) no earlier than the end of such three (3) calendar day period, the Company Board (after consultation with its outside legal counsel and financial advisor), shall have determined in good faith, after considering the terms of any proposed amendment or modification to this Agreement proposed by Parent during such three (3) calendar day period, that such Superior Proposal still constitutes a Superior Proposal and that the failure to terminate this Agreement pursuant to Section 9.01(d)(ii) to enter into a definitive agreement in connection therewith would be inconsistent with its fiduciary duties under applicable Law (it being understood and agreed that any change to the financial or other material terms of a proposal that was previously the subject of a notice hereunder shall require a new notice to Parent as provided above, but with respect to any such subsequent notices references herein to a "three (3) calendar day period" shall be deemed to be references to a "two (2) calendar day period"); and

(B) prior to effecting such Adverse Recommendation Change with respect to a Company Intervening Event, (x) the Company has notified Parent in writing that it intends to effect such Adverse Recommendation Change, describing in reasonable detail the reasons for such Adverse Recommendation Change, (y) if requested to do so by Parent, for a period of three (3) calendar days following delivery of such notice, the Company shall have discussed and negotiated in good faith, and shall have made the Representatives of the Company available to discuss and negotiate in good faith, with Parent and its Representatives any bona fide proposed modifications to the terms and conditions of this Agreement and (z) no earlier than the end of such three (3) calendar day period, the Company Board shall have determined in good faith, after considering the terms of any proposed amendment or modification to this Agreement proposed by Parent during such three (3) calendar day period, that the failure to effect an Adverse Recommendation Change would be inconsistent with the Company Board's fiduciary duties under applicable Law.

30. The Merger Agreement also provides for a "termination fee" of $2,650,000 payable by the Company to Yanmar if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

31. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

32. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

33. First, the Proxy Statement omits material information regarding the Company's financial projections.

34. The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

36. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Donnelly Penman & Partners ("Donnelly").

37. With respect to Donnelly's Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 13.0% to 15.0% and 16.0% to 17.0%, and the perpetuity growth rates ranging from 2.0% to 3.0%; (ii) the estimates of unlevered free cash flow for the Company used by Donnelly in

the analysis and all underlying line items; (iii) the range of illustrative terminal values for the Company; and (iv) Donnelly's basis for utilizing a range of exit multiples between 7.0x and 8.0x.

38. With respect to Donnelly's Leveraged Buyout Analysis, the Proxy Statement fails to disclose Donnelly's basis for utilizing a range of FY 2023F EBITDA multiples of 6.5x to 7.5x and assumed internal rate of returns ranging from 19.0% to 22.0%.

39. With respect to Donnelly's Transaction Premia Analysis, the Proxy Statement fails to disclose: (i) the transactions observed by Donnelly in the analysis; and (ii) the premiums paid in the transactions.

40. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. Third, the Proxy Statement omits material information regarding potential conflicts of interest of Donnelly.

42. The Proxy Statement fails to disclose the nature of the previous services Donnelly provided to the Company, as well as the amount of compensation Donnelly received for providing such services.

43. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) The Recommendation of ASV's Board and ASV's Reasons for the Merger; (iii) Opinion of the Company's Financial Advisor; and (iv) Company

Financial Forecasts.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**COUNT I**

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and ASV**

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. ASV is liable as the issuer of these statements.

48. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

49. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

52. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of ASV within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of ASV and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved

in the making of the Proxy Statement.

58. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 1, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com